UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-22432-CIV-ZLOCH

ARMANDO LACASA and
VINCENT J. MAZZILLI,

      Plaintiffs,

vs.

                                   **FINAL ORDER OF DISMISSAL**

PENELOPE TOWNSLEY, as the
Miami-Dade County Supervisor
of Elections, et al.,

      Defendants.
_____/

THIS MATTER is before the Court upon Plaintiffs' Amended
Emergency Motion For Preliminary Injunction (DE 25). The Court has
carefully reviewed said Motion, the entire court file and is
otherwise fully advised in the premises.

Plaintiffs initiated the above-styled cause with the filing of
their Complaint (DE 1) on June 29, 2012 against Penelope Townsley,
as the Miami-Dade County Supervisor of Elections ("Townsley"),
seeking a declaration that "Plaintiffs, and all registered Miami-
Dade County voters, have the right to vote in the 2012 Democratic
Primary for the State Attorney for Miami-Dade County."  DE 1, p.
12.  Thereafter, Plaintiffs filed an Amended Complaint (DE 6) and
Emergency Motion For Preliminary Injunction (DE 9).  The Court
heard argument on Plaintiffs' Motion (DE 9) on July 12, 2012, and
thereafter, denied said Motion without prejudice, with leave to
refile upon Plaintiffs' filing of a Second Amended Complaint adding

the State of Florida, through the Secretary of State and the State Elections Canvassing Commission as Defendants.   See DE 23. Plaintiffs then filed their Second Amended Complaint For Declaratory And Injunctive Relief (DE 24) ("Complaint") and Amended Emergency Motion For Preliminary Injunction (DE 25).   The Court heard argument on Plaintiffs' Motion (DE 25) on July 23, 2012.   For the following reasons, Plaintiffs' Complaint (DE 24) will be dismissed for lack of subject matter jurisdiction and Plaintiffs' Amended Emergency Motion (DE 25) will be denied as moot.

## I. Background

The above-styled cause concerns the following question: whether individual voters not registered as Democrats have the right to vote in the Democratic Primary election for the office of Miami-Dade State's Attorney when the Florida Democratic Party has asserted no interest in including or excluding said voters from the Primary, and the State of Florida has asserted an interest in maintaining a closed Primary.   See DE 24-2.   Plaintiff Vincent Mazzilli ("Mazzilli") is a duly registered voter not affiliated with any political party and Plaintiff Armando Lacasa ("Lacasa") is a duly registered voter affiliated with the Republican Party.   DE 24, p. 2.   There is no Republican Primary for this office.   By Count I of their Complaint, Plaintiffs assert the right to suffrage and the right to vote under Articles I and VI of the Florida

2

Constitution.  DE 24, p. 11.  By Count II, Plaintiffs allege a violation of their Constitutional right to vote under the First Amendment to the United States Constitution, as incorporated to the states by the Fourteenth Amendment.

Plaintiffs allege that Section 5(b) of Article VI of the Florida Constitution, also called the Universal Primary Amendment, has been used as a "gimmick" to close the Democratic Primary election for the office of the Miami-Dade State's Attorney, thus allowing only registered Democrats to vote.  The Universal Primary Amendment, passed by the voters of Florida in 1998, reads as follows: "If all candidates for an office have the same party affiliation and the winner will have no opposition in the general election, all qualified electors, regardless of party affiliation, may vote in the primary elections for that office."  Fla. Const art. VI, § 5(b).  In 2000, then-Secretary of State Katherine Harris issued an Advisory Opinion purporting to interpret the Amendment. Her opinion reads in relevant part, "it is the opinion of the Division that a write-in candidate constitutes opposition in a general election.  If a write-in candidate will participate in the general election, the first and if necessary, the second primary will remain closed."  DE 24-1, p 2.

The August 14, 2012, Democratic Primary for the office of Miami-Dade State's Attorney includes two Democratic candidates— the incumbent Miami-Dade State's Attorney, Ms. Katherine Fernandez

Rundle, and her challenger, Mr. Rod Vereen.   By April 20, 2012, two write-in candidates, Ms. Michele Samaroo and Mr. Omar Malone, were duly qualified as write-in candidates for purposes of the general election.   Ms. Samaroo qualified as a write-in candidate in the general election as a Democrat and Mr. Malone qualified as a write-in candidate in the general election as a Republican.   DE 18-2, p. 3.   Under applicable Florida Statutes, in the general election a prospective voter will have the opportunity to vote for Ms. Samaroo or Mr. Malone by filling in their names in a "blank space" next to the name of the winner of the Democratic Primary.   Because of the existence of these two write-in candidates, on June 14, 2012, the Democratic Primary was declared a "closed" primary by the State. Plaintiffs' essential claim here is that they, and all other duly registered voters in Miami-Dade County, should have the opportunity to vote in the Democratic Primary, as the Primary will serve as the de facto election for the office of Miami-Dade State's Attorney. Plaintiffs ask the Court to declare that write-in candidates, including Ms. Samaroo and Mr. Malone, do not constitute "opposition," in the general election, and thus the Democratic Primary should not be closed but open to all Miami-Dade County registered voters.


## II. Jurisdiction

Plaintiffs allege that this Court has jurisdiction over their

claims pursuant to 28 U.S.C. §§ 1331 and 1367 because "[the] action involves claims arising under the Constitution of the United States and claims that are so related to those claims arising under the Constitution that they form part of the same case or controversy." DE 24, p. 3.  Thus, Plaintiffs allege that as an initial matter, this Court has original jurisdiction over the above-styled cause because of the existence of the claims brought under the United States Constitution.

However, the Court can only exercise jurisdiction over Plaintiffs' Constitutional claims if Plaintiffs' Complaint (DE 24) presents a justiciable case or controversy.  See Allen v. Wright, 468 U.S. 737, 750 (1984) ("Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies'" and the various doctrines surrounding this requirement are "founded in concern about the proper——and properly limited——role of the courts in a democratic society.") (internal citations and quotation marks omitted).  The question of a plaintiff's standing to bring a constitutional claim is "perhaps the most important of these doctrines" informing whether a case or controversy exists.  Id.  This "irreducible constitutional minimum of standing" requires that a plaintiff has suffered "an injury in fact——an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical . . . ."  Lujan v. Defenders of

5

<u>Wildlife</u>, 504 U.S. 555, 558 (1992) (internal citations and quotation marks omitted). Plaintiffs must also establish a "causal connection between the injury and conduct complained of" that is traceable to the defendant and show that it is "likely . . . that the injury will be redressed by a favorable decision." <u>Id.</u> (internal citations and quotation marks omitted). At issue here is whether Plaintiffs have sufficiently alleged the first requirement of standing——"an injury in fact," that is, "an invasion of a legally protected interest" which gives the Court jurisdiction over the above-styled cause. <u>Id.</u>; <u>see</u> <u>also</u> <u>Common Cause/Georgia v. Billups</u>, 554 F.3d 1340, 1350 (11th Cir. 2009).

A. Plaintiffs' Purported Associational Interest

By Count II of their Complaint (DE 24), Plaintiffs allege a "right to vote in the 2012 Democratic Primary for the State Attorney for Miami-Dade County." DE 24, p. 12. The Supreme Court has recognized that the right to vote in a party primary is, in the broadest sense, one "secured by the Constitution," subject to federal regulation. <u>United States v. Classic</u>, 313 U.S. 299, 314 (1941). Yet, the Supreme Court has never declared an absolute right to vote in a party primary election, even under circumstances when said primary could amount to the de <u>facto</u> general election.

The Supreme Court has instead engaged in a careful balancing of the various interests at stake——including a balancing of the non-party voter's interest in voting, the political party's

interest in either excluding or inviting non-party members to vote in its election, and the state's interest in maintaining a particular election system.  From the line of cases exploring primary election cases, it is clear that the Supreme Court views these competing associational interests as informing and interacting with one another, and the associational rights of a participant in the electoral system will depend on the particular circumstances of the election at issue.  The present litigation raises a unique factual scenario that certainly has not been considered by the Supreme Court.  Yet, from the line of cases discussing the associational boundaries of a non-party member's interest in voting in relation to the other competing interests, this Court can glean several principles emerging from the Supreme Court's jurisprudence.  The Court will explore these principles as they apply to the present litigation.

Arising first out of the commonly-termed White Primary Cases, the Supreme Court established that non-party voters may not be excluded from voting in a party primary if such exclusion "violates some independent constitutional proscription."  California Democratic Party v. Jones, 530 U.S. 567, 573 n.5 (2000).  Thus for example, a voter cannot be deprived of the right to vote in a determinative primary election on account of his race in violation of the Fifteenth Amendment.  Terry v. Adams, 345 U.S. 461 (1953); see also Smith v. Allwright, 321 U.S. 649 (1944).

Yet, the State may place certain limitations on voting in a party's primary, such as by enforcing registration requirements. Thus in <u>Rosario v. Rockefeller</u>, 410 U.S. 752 (1973), the Court upheld a New York statute requiring party registration up to eleven months before voting in the party's primary.  According to the Court, such a requirement "did not constitute a ban on [the voters'] freedom of association, but merely a time limitation on when they had to act in order to participate in their chosen party's next primary."  <u>Id.</u> at 758.  Writing for the Court in <u>Rosario</u>, Justice Stewart noted the state's important interests in preventing "party raiding, whereby voters in sympathy with one party designate themselves as voters of another party so as to influence or determine the results of the other party's primary," and the state's interest in preserving the "integrity of the electoral process."  <u>Id.</u> at 760-61.  Further, in the Court's most recent voting primary case on point, <u>Clingman v. Beaver</u>, 544 U.S. 581 (2005), the Court upheld a state statute permitting only registered members of a party to vote in that party's primary, unless the party wished to invite independent voters.  Without reaching a majority holding as to whether a non-party voter had an associational right to vote in a party primary to which he did not belong, the Court noted the overriding state interests in the preservation of political parties as "identifiable interest groups," the interest in supporting parties' electioneering

efforts, and the interest in preventing "party raiding." Id. at 594-97.

However, the Court has also recognized that the interests of a political party may override the interests of the state or the individual voter.  The Court has considered the interests of the political party when it wishes to include non-party voters in its primary, as well as when it wishes to exclude them.  Thus in Tashjian v. Republican Party of Connecticut, 479 U.S. 208 (1986), the Court struck down a state statute requiring voters in a party primary to be registered members of that party, when the Republican Party wished to permit independent voters to vote in its primary. In reaching its conclusion, the Court recognized the party's interest in admitting non-party voters because of the "critical juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community." Id. at 216.  Further, in Jones, California's blanket primary system was declared unconstitutional as violative of the political parties' First Amendment rights to define their associational boundaries.  Writing for the majority in Jones, Justice Scalia emphasized the "basic function of a political party," which is to determine, for itself, its candidate selection process.  530 U.S. at 581.

Indeed, the factual scenario before this Court is unique in that one of the three relevant participants that may have an

interest in this election is notably silent. The Florida Democratic Party has stated that it "has no official rule or position regarding whether the 2012 Democratic Primary for the Miami-Dade County State Attorney should be open to all voters or closed only to registered Democrats." DE 24-2. Plaintiffs insist that this fact is essential in the Court's consideration of Plaintiffs' associational rights at stake. See Complaint, DE 24, p. 12 ("in the absence of a countervailing right asserted by a political party in maintaining a closed primary, [Plaintiffs] have the right to vote in a primary that is the de facto election regardless of their primary affiliation.").

Plaintiffs also insist that the Supreme Court's fractured holding in Clingman, in which Justice O'Connor, in her concurrence, recognized an associational interest in voting in the primary of a party to which one does not belong, compels the requested result in the present litigation. At the July 12, 2012, Hearing on Plaintiffs' Emergency Motion For Preliminary Injunction (DE 9), Counsel for Plaintiffs stated that the Fourth Circuit, in Miller v. Brown, recognized that Justice O'Connor's concurrence in Clingman constituted the holding of the Court regarding whether there is an associational interest in voting in a primary election of a party to which one does not belong. 503 F.3d 360, 366 n.6 (4th Cir. 2007). In fact, the Fourth Circuit in Miller v. Brown made no such a holding. The Miller Court first quoted the "Marks Rule"

regarding plurality opinions: "'When a fragmented Court decides a case and no single rationale explaining the results enjoys the assent of five Justice, the holding of the court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'"  Id. (citing Marks v. United States, 430 U.S. 188, 193 (1977)).  The Fourth Circuit further explained,

> In Clingman, Justices O'Connor and Breyer concurred in the judgment on the narrowest grounds.  Although rejecting the conclusion of the plurality that the associational interests at issue were of only minimal importance, the concurring Justices agreed with the plurality that the semiclosed primary system imposed only a minor burden on the LPO's associational rights and that there were adequate state interests justifying that burden.  We must therefore view the latter position as the holding of the Court.  We thus are not bound to accept the concurring Justices' view regarding the importance of the associational interests at stake or their view of the associational bond created by the act of voting in one party's primary.  Indeed, the Court has never adopted the view of the Clingman concurring Justices concerning the associational bond formed by voting in a party primary.

Id.   This Court agrees. It is not bound to accept Justice O'Connor's concurring opinion regarding the purported First Amendment interests in forming dual associations or casting a vote in a party primary to which one does not belong, and it will not recognize such interests today.

Further, the Court is not persuaded Justice O'Connor even recognized an absolute associational right in "casting a ballot in a given primary." Clingman, 544 U.S. at 602.  Perhaps considering the unique facts in front of the Court in Clingman, Justice

11

O'Connor stated: "Accordingly, where a party invites a voter to participate in its primary and the voter seeks to do so, we should begin with the premise that there are significant associational interests at stake."  Id. at 602.

Justice O'Connor's concurrence thus seems confined to the facts in Clingman, where the Libertarian Party of Oklahoma affirmatively sought to associate with non-party members by inviting them into the party's primary.  The language upon which Plaintiffs base their argument, in contrast, appears to posit a mere hypothetical situation.  Quoting Justice Powell's dissent in Democratic Party of U.S. v. Wisconsin ex rel. La Follette, Justice O'Connor states: "The act of casting a ballot in a given primary may, for both the voter and the party, constitute a form of association that is at least as important as the act of registering."  Id. at 601 (citing 450 U.S. 107, 130 n.2 (1981)) (emphasis added).  Justice O'Connor then proceeds to recognize that a voter who wishes to form dual associations, such as by proactively and sincerely "attending meetings or making political contributions," does have an associational interest in voting in the primary of a party to which one does not belong, at least under the Clingman factual landscape.  Id.  As Counsel for Defendant Townsley explained it, the additional associational activity between the prospective voter and the party wishing to include non-party voters perhaps elevated the non-party voter's First Amendment

12

associational interest.  Nevertheless, the Court need not define the boundaries of the associational interests as Justice O'Connor viewed them in that case, because her concurrence is not the holding of the <u>Clingman</u> Court.  <u>Marks</u>, 430 U.S. at 193; <u>Miller</u>, 503 F.3d at 366 n.6.

This Court must therefore look to the Supreme Court's other holdings to determine whether Plaintiffs have alleged a cognizable associational interest under the First Amendment.  The Court first notes that here, Plaintiffs do not seek to form any meaningful association with the Florida Democratic Party, beyond the "episodic" act of "casting a ballot in a given primary."  544 U.S. at 601 (J. O'Connor concurring).  <u>See</u> DE Nos. 21-2 & 21-3 (in which both Plaintiffs state that they do "not wish to change [] party affiliation and register as a member of the Democratic Party to vote in the Democratic Primary for the Miami-Dade County State Attorney.").  Further, there has also been no evidence that Plaintiffs wish to associate with the Florida Democratic Party in the sense of "attending meetings or making political contributions."  544 U.S. at 601.  Finally, in contrast to <u>Clingman</u>, the Florida Democratic Party has not sought to associate with Plaintiffs, such as by inviting them into their Party's Primary.  DE 24-2.

Therefore, based on its finding that Justice O'Connor's concurrence in <u>Clingman</u> is not binding precedent, this Court finds

13

that the associational interest Plaintiffs allege amounts to
nothing more than a "desire" to vote in a party primary to which
one does not belong.  See Jones, 530 U.S. at 573 n.5 ("As for the
associational 'interest' in selecting a candidate of a group to
which one does not belong, that falls far short of a constitutional
right, if indeed it can even fairly be characterized as an
interest.  It has been described in our cases as a 'desire'——and
rejected as a basis for disregarding the First Amendment right to
exclude.").  The Court also is mindful of the fact that if this
Court were to hold that Plaintiffs did have an associational
interest in casting a vote in the Florida Democratic Party Primary,
a Party to which Plaintiffs admittedly have no interest in joining
or in supporting, there would be no end to the number of
"associations" Plaintiffs could have.  The concept of political
association would then cease to carry any weight.  See Clingman,
544 U.S. at 589 ("The issue is not 'dual associations,' but
seemingly boundless ones.") (internal citation omitted); Tashjian,
479 U.S. at 235-36 (stating that the voter who wishes to vote in a
primary without registering "forms no more meaningful an
'association' with the Party than does the independent or the
registered Democrat who responds to questions by a Republican party
pollster. If the concept of freedom of association is extended to
such casual contexts, it ceases to be of any analytical use.")
(Scalia, J. dissenting) (internal citation omitted).

14

B. Plaintiffs Lack Standing To Bring Their Constitutional
Claim

Consequently, Plaintiffs have not established a "legally protected interest" giving them standing before this Court. <u>Lujan</u>, 504 U.S. at 558. Absent this necessary "injury in fact," there is no justiciable or cognizable "case or controversy" before this Court, and the Court lacks jurisdiction over Count II of Plaintiff's Complaint (DE 24). The Court will therefore dismiss this Count consistent with the terms and conditions of this Order as detailed below.

The Court has discretion to exercise supplemental jurisdiction over the Florida state law claims in Count I. 28 U.S.C. § 1367(a). However, when a district court has dismissed all claims over which it had original jurisdiction, the court has discretion to decline to exercise supplemental jurisdiction over related state law claims. 28 U.S.C. § 1367(c). The Court may also decline to exercise supplemental jurisdiction when the related claim raises a novel issue of state law, as is the case here. The relevant statute provides, in pertinent part:

> The district courts may decline to exercise
> supplemental jurisdiction over a claim under
> subsection (a) if –
>
> (1) the claim raises a novel or complex issue of State
> law . . .
>
> (3) the district court has dismissed all claims over
> which it has original jurisdiction.

28 U.S.C. § 1367(c). Applying 28 U.S.C. § 1367(c)(1) to the

15

instant facts, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims contained in Count I because they present novel issues of state law that are better left to the state courts to decide. Applying 28 U.S.C. § 1367(c)(3) to the instant facts, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims contained in Count I now that the Court has dismissed the claim over which it purportedly had original jurisdiction.

### III. Plaintiffs' First Amendment Claim

Assuming _arguendo_ that Plaintiffs have sufficiently alleged a First Amendment associational interest in voting, and the Court exercised supplemental jurisdiction over Count II of Plaintiffs' Complaint (DE 24), the Court finds that the State of Florida's interests outweigh Plaintiffs' limited interest in voting in a primary of a party to which they do not belong. The Supreme Court has delineated two standards that should be employed when a plaintiff is found to have some associational interest in voting. "Regulations that impose severe burdens on associational rights must be narrowly tailored to serve a compelling state interest. However, when regulations impose lesser burdens, 'a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.'" _Clingman_, 544 U.S. at 586-87 (internal citations omitted).

Even if the Court were to find that Plaintiffs had a First

Amendment interest in casting a vote in this election, any burden imposed upon Plaintiffs by the Universal Primary Amendment is neither heavy nor severe.  The State has offered a relatively simple mechanism for a voter to change his party affiliation.  A voter who wishes to register for the Florida Democratic Party had to  simply complete a Florida Voter Registration Application and indicate one's voter "Party Affiliation" with the "Florida Democratic Party"[1] by July 16, 2012.  This requirement that prospective voters register with the Florida Democratic Party 29 days before the party primary stands in stark contrast to the regulation imposed in Rosario, which required party registration up to eleven months prior to participation in the primary election. 410 U.S. at 761.  Thus, the Court finds that the requirement of voter registration in the Florida Democratic Party is slight, and can be easily remedied by the prospective voter's registration. See Jones, 530 U.S. at 584 ("The voter who feels himself disenfranchised should simply join the party.  That may put him to a hard choice, but it is not a state-imposed restriction upon his freedom of association, whereas compelling party members to accept his selection of their nominee is a state-imposed restriction upon theirs."); Nader v. Schaffer, 417 F. Supp. 837, 843 (D. Conn. 1976) (summarily aff'd, 429 U.S. 989 (1976)) (holding that enrollment in

---

[1] The Florida Voter Registration Application can be found at http://election.dos.state.fl.us/pdf/webappform.pdf.

the relevant party "imposes absolutely no affirmative party obligations on the voter, in terms of time or money, and it does not even obligate him to vote for the party's positions or candidates or to vote at all.").

Thus, strict scrutiny is not appropriate in this case, and were the weighing of interests properly before the Court, it would employ the intermediate standard set forth in <u>Clingman</u> in weighing the State's interests against Plaintiffs. The State of Florida has offered three "important regulatory interests" justifying the implementation of the Universal Primary Amendment in closing this Primary election.

The State first cites <u>Clingman</u> for the proposition that "keeping a political party's primary election closed will preserve the party 'as [a] viable and identifiable interest group[], insuring that the results of [its] primary election, in a broad sense, accurately reflect the voting of the party members." DE 31, p. 19 (<u>citing</u> <u>Clingman</u>, 544 U.S. at 594-95). The Court first notes that it is of no moment that the Florida Democratic Party has declared no interest in maintaining a closed primary or opening the Primary to non-Democratic voters. <u>See</u> DE 24-2. As the Supreme Court recognized in <u>Clingman</u>, the State may express its own interest in the preservation of the party system, independent of any interest expressed by the party itself. So in <u>Clingman</u>, even though the Libertarian Party of Oklahoma sought to open its primary

to registered Republicans and Democrats, the state was able to assert its own interest in contrast to that of the Libertarian Party.  544 U.S. at 594.

Here, the State of Florida also wishes to avoid primary election outcomes which would confuse the general voting population about the ideology of the given party.  Further, the State finds important the "'crucial role of political parties in the primary process'" which promotes the general democratic process.  DE 31, p. 20 (quoting Clingman, 544 U.S. at 595; American Party of Texas v. White, 415 U.S. 767 n.14 (1974)).  The Court finds these interests compelling, as they both relate to the party's right to define its own associational boundaries and garner support for its particular cause.  Thus for example, upon the qualification of Ms. Fernandez Rundle and Mr. Vereen for the August 14, 2012, Democratic Primary, the Florida Democratic Party had the opportunity to persuade all registered voters——affiliated or non-affiliated——to register with the Party if they so chose.  The Court recognizes the importance of such party building efforts and the interest in maintaining party identity.  See Jones, 530 U.S. at 579 (recognizing that "a single election in which the party nominee is selected by nonparty members could be enough to destroy the party.").

The State of Florida next asserts that maintaining a closed primary ensures that the State's registration rolls continue to accurately reflect voters' political preferences.  According to the

19

State, an accurate reflection of political preferences will then encourage Florida citizens to vote.  The Court agrees that this is an important state objective.  <u>Clingman</u>, 544 U.S. at 596.  Finally, the State of Florida asserts an interest in preventing "party raiding" and "excessive factionalism" that may result from allowing non-party members to vote in a given party's primary.  Under the facts of this case, however, the Court is not concerned with "party raiding" in the sense that those voters not affiliated with the Florida Democratic Party will register with the Party for purposes of voting solely in the August 14, 2012, Primary.  This very action could have been taken by Plaintiffs had they been willing to change their registration.   Yet, the Court does find compelling the related concern, which is that if non-party members not willing to disaffiliate with another party were allowed to vote in the Democratic Primary, their votes could potentially transform the identity of the Florida Democratic Party in a way not condoned by the Party itself.  <u>See</u> <u>Jones</u>, 530 U.S. at 579 (noting that, for example, "[i]n the 1860 Presidential election, if opponents of the fledgling Republican Party had been able to cause its nomination of a proslavery candidate in place of Abraham Lincoln, the coalition of intraparty factions forming behind him likely would have disintegrated, endangering the party' survival . . . .").

In addition to the State's compelling interests, the Court finds significant the interests of Defendant Townsley, the Miami-

Dade County Supervisor of Elections.  Defendant Townsley asserts an "independent interest in the orderly operation of elections."  DE 18, p. 14 (citing Timmons v. Twins City Area New Party, 520 U.S. 351, 358 (1997)).  The Court recognizes the fact that Defendant Townsley and her office has "programmed, printed, and distributed ballots."  DE 18, p. 18.  The Court is also mindful of the fact that granting Plaintiffs' relief here could upset the operation of the other primaries across the State that have been closed pursuant to the Universal Primary Amendment.  Such a "patchwork of open and closed primaries that depend on whether a particular party in a particular election decides to assert a recognized right" would then further undermine the "orderly operation of elections" across the State.  DE 18, p. 15.

The Court finds that the State and the County's asserted interests outweigh those offered by Plaintiffs.  Thus, even if Plaintiffs have some associational interest in voting in the Democratic Primary election, the Court finds that such an interest is not severe, and the State and County's "important regulatory interests" are sufficient here to justify their "reasonable, nondiscriminatory restrictions." Clingman, 544 U.S. at 586-87.

### IV. Plaintiffs' Florida Constitutional Claims

Assuming arguendo that the Court had exercised supplemental jurisdiction over the Florida state law claims, the Court would

21

find that Plaintiffs' requested relief under Count I cannot be granted.  This is because the Court finds that the Universal Primary Amendment is unambiguous, and even if the Court were to consider the Advisory Opinion by then-Secretary of State Katherine Harris, the Court finds its reasoning persuasive.

By Count I of their Complaint (DE 24), Plaintiffs state that under Article I of the Florida Constitution, all registered Miami-Dade County voters have "the right to suffrage," and that under Article VI of the Florida Constitution,  all registered Miami-Dade County voters have "the specifically enumerated right to vote in a primary where the winner of that primary faces no 'opposition,' as interpreted under the Florida Constitution, regardless of their party affiliation."  DE 24, p. 11.  Plaintiffs further contend that "a 'blank space' on a general election ballot is not opposition." Id., p. 11.

The Universal Primary Amendment reads as follows: "If all candidates for an office have the same party affiliation and the winner will have no opposition in the general election, all qualified electors, regardless of party affiliation, may vote in the primary elections for that office."  Fla. Const. art. VI, § 5(b).

The Court first notes that Plaintiffs do not contest that the write-in candidates duly qualified for their candidacy.  Indeed, by Florida Statute, write-in candidates must meet specific qualifying

requirements.   In this case, their candidacy had to have been declared between April 16, 2012, and noon on April 20, 2012.  <u>See</u> Fla. Stat. § 99.061 (listing requirements).  Further, by Florida Statute, the definition of "candidate" includes write-in candidates.  <u>See</u> Fla. Stat. § 97.021(5)(b) ("'Candidate' means any person to whom any one or more of the following applies . . . (b) Any person who seeks to qualify for election as a write-in candidate.").

Therefore, because the write-in candidates are duly qualified, and because they are included under the definition of "candidate" by Florida Statute, the Court first notes that the first clause of the Universal Primary Amendment compels the outcome in this case: "If all candidates for an office have the same party affiliation . . . ."  Here, write-in candidate Michele Samaroo is a registered Democrat and write-in candidate Omar Malone is a registered Republican.  DE 18-2, p. 2.  Consequently, all candidates for the office of Miami-Dade State's Attorney do <u>not</u> have the same party affiliation, because there are three registered Democrats and one registered Republican.  Fla. Const. art. VI, § 5(b).  In this case, then, because Mr. Malone is a registered Republican, the Universal Primary Amendment would not work to open the Democratic Primary to all registered voters.

Nevertheless, the Court will next consider the second clause of the Universal Primary Amendment——whether the write-in candidates

constitute sufficient opposition under the Florida Constitution, thus justifying closing the Democratic Primary to only registered Democrats. Plaintiffs request that this Court interpret the Florida Constitution in such a way so as to "construe a constitutional provision consistent with the intent of the framers and the voters." In re Senate Joint Res. of Leg. Apportionment, 1176,83 So. 3d 597, 614 (Fla. 2012). Plaintiffs also cite to Florida Soc. of Ophthalmology v. Florida Optometric Assoc., 489 So. 2d 1118, 1119 (Fla. 1986), for the proposition that a court must engage in a "purposive analysis" when interpreting the Florida Constitution "even when the constitutional text seems to have an unambiguous plain meaning." DE 25, p. 13. Thus in Florida Soc. of Ophthalmology, the court stated that "[a]pplication of that [plain-text] rule . . . must be tempered by judicial deference to offsetting and equally constraining rules," to ensure that "constitutions receive a broader and more liberal construction than statutes" and that "constitutional provisions should not be construed so as to defeat their underlying objectives." 489 So. 2d at 1119. Yet, in that case, the court stated that the legislation did not address the situation which was presented to the court and for that reason, the court engaged in purposive interpretation. In regard to the present litigation, the court in Florida Soc. of Ophthalmology states that "[a]ny inquiry into the proper interpretation of a constitutional provision must begin with an

24

examination of that provision's explicit language. If that language is clear, unambiguous, and addresses the matter at issue, then it must be enforced as written. <u>Id.</u> (<u>citing</u> <u>Plante v. Florida Commission on Ethics</u>, 354 So. 2d 87, 89 (Fla. 1st DCA 1977)); <u>see also</u> <u>Ervin v. Collins</u>, 85 So. 2d 852, 855 (Fla. 1956) (holding that courts "are not permitted to color [Florida constitutional provisions] by the addition of words or the engrafting of [the court's] views as to how it should have been written.").

Here, the language of the Universal Primary Amendment is clear and unambiguous from the face of the text.[2] Thus, the Court need not consider then-Secretary of State Harris' Advisory Opinion interpreting the Amendment; or, to the extent that her Opinion recognizes the clarity of the Amendment as it relates to write-in candidates, the Court agrees.

First, in finding that the language of the Amendment is unambiguous, the Court notes again that the write-in candidates are considered "candidates" by Florida Statute, <u>see</u> Fla. Stat. § 97.021(5)(b), and that they met all qualifying requirements to be

---

[2] The Court notes that in the case of <u>Marvin Jacobson v. Hubert Dale Martin, III, et al.</u>, Case No. 2006-CA-1160, the Florida Circuit Court of the Fifth Judicial Circuit, in and for Lake County, Florida, held that under the Universal Primary Amendment, write-in candidates did constitute "opposition" justifying the closing of the primary. That court found that the Universal Primary Amendment was "clear and unambiguous" and because there was no viable issue before that court, it lacked jurisdiction to hear the case. While that Florida state trial ruling is not binding here, the Court does find its reasoning persuasive.

considered write-in candidates.  <u>See</u>  Fla. Stat. § 99.061.  Thus, it is strikingly clear to the Court that Ms. Samaroo and Mr. Malone are candidates who, in the general election, will oppose the winner of the August 14, 2012, Democratic Primary.  Plaintiffs ask the Court to review figures and statistics showing the scant support write-in candidates have ever received in the general election in Florida.  However, these figures are simply beside the point.  The Court will not consult a crystal ball to determine when and whether a given write-in candidate constitutes "real" or mere illusory opposition.  The question is not whether Ms. Samaroo and Mr. Malone <u>will</u> <u>likely</u> prevail in the general election over the winner of the Democratic Primary (or even garner a significant percentage of the vote), but whether, under the current framework set forth by the Florida Constitution, they <u>could</u>.  The current statutory and constitutional framework in Florida allows for write-in candidates to have the opportunity to prevail in the general election, and the Court today will not declare that these candidacies are futile.

Further, Plaintiffs' argument that the write-in candidates do not constitute "opposition" justifying the closed election is inconsistent with the structure of Florida's election laws.  If a candidate in a general election is unopposed, meaning that if there are no other candidates, whether write-in candidates or party-supported candidates, "the candidate [is deemed] to have voted for himself or herself" and thus "the names of [the] unopposed

candidates shall not appear on the general election ballot." Fla. Stat. § 101.151(7). It is this type of primary that is, by definition, a _de facto_ general election because there will actually be no opportunity to vote <u>at</u> <u>all</u> in the general election——the election for the office of Miami-Dade State's Attorney will be absent from the general election ballot. In contrast, the situation Plaintiffs decry here is much different. In the November general election, all Miami-Dade County voters will have the opportunity to vote for the either the winner of the Democratic Primary (Ms. Fernandez Rundle or Mr. Vereen), Ms. Samaroo, or Mr. Malone. While Plaintiffs may claim that the write-in candidates are not "real" or legitimate candidates, their presence does not diminish Plaintiffs' and all other duly registered voters' right to cast a vote in the general election.

For the aforementioned reasons, if the Court were to properly have jurisdiction over the above-styled cause and consider the claims presented in Count I and Count II of Plaintiffs' Complaint (DE 24), the Court would find that Plaintiffs are unlikely to succeed on the merits of either Count. <u>Suntrust Bank v. Houghton Mifflin Co.</u>, 252 F.3d 1165, 1166 (11th Cir. 2001). Therefore, this Court would deny Plaintiffs' Amended Emergency Motion For Preliminary Injunction (DE 25).

V. Conclusion

In reaching its decision today, the Court is acutely mindful of the role federal courts may assume in the democratic process. Plaintiffs claim that the Universal Primary Amendment has been used across the State as a "gimmick" to close primaries that should have remained open.  Yet the Court seriously questions whether Plaintiffs have chosen the appropriate avenue for seeking redress. The Court echoes the sentiments of the district court in Nader v. Schaffer, in which Connecticut's closed primary system was upheld against attack by voters who wished to vote in the primary without registering with the political party.  429 U.S. at 850 (summarily aff'd, 429 U.S. 989 (1976)).  The Court in Nader explained,

> Theoretically the laws are still made by the legislatures and, although the effort to achieve a change in the statutes requires a great deal of time, hard work and infinite patience, it is not impossible. The presently popular course of raising a federal constitutional question and seeking a change in the law by judicial fiat, is quicker, more academically attractive and perhaps more thorough. But such action tends in itself to work in derogation of the separation of powers and our democratic system of government. The courts should not use this power for the purpose of exercising "some amorphous, general supervision of the operations of government," United States v. Richardson, 418 U.S. 166, 192, 94 S.Ct. 2940, 2954, 41 L.Ed.2d 678 (1974) (Powell, J., concurring), but only to redress violations of basic human rights to which federal constitutional protections have been extended or to correct governmental action which otherwise conflicts with express provisions of the Constitution. The plaintiffs' case does not fall within these designations.

This Court agrees.  Here, too, Plaintiffs' requested relief may lie, if at all, in the democratic process, and that is a system

28

in which, at least at this juncture, this Court will not intervene.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Count II of Plaintiffs' Second Amended Complaint For Declaratory And Injunctive Relief (DE 24) be and the same is hereby **DISMISSED** because the Court lacks jurisdiction over the same;

2. Count I of Plaintiffs' Second Amended Complaint is **DISMISSED** because the Court declines to exercise jurisdiction over the same pursuant to § 1367(c)(1) and (3); and

3. Plaintiffs' Amended Emergency Motion For Preliminary Injunction (DE 25) and all other pending Motions be and the same are hereby **DENIED** as moot.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this ___25th___ day of July, 2012.

_____
WILLIAM J. ZLOCH
United States District Judge

Copies Furnished:

All Counsel of Record

29